UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 10 2012

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

ROBBIE AND GWENNA HILL

and

JOSEPH AND CATHERINE SMITH,

    Plaintiffs,

vs.                                      Case No. 4:12 cv 500 KGB

SOUTHWESTERN ENERGY COMPANY,

This case assigned to District Judge Baker
and to Magistrate Judge Young

    Defendant.

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, for themselves and on behalf of all similarly situated persons, and for cause of action against the Defendants, state as follows:

### INTRODUCTION

This class action lawsuit is filed on behalf of the named Plaintiffs, and all those citizens and/or residents and/or property owners of the State of Arkansas who live and/or own property within a three (3) mile radius of any Salt Water Disposal Wells (hereinafter referred to as *Injection Wells*) being operated by the Defendant within the State of Arkansas.

This action is being brought against the Defendant for trespass, theft of property, and unjust enrichment that the *Injection Wells* have caused and continue to cause.

This action seeks, among other relief, injunctive relief in the form of monitoring of *Injection Well* fluid migration as well as replevin of all sums and profits derived by the Defendant, together with other attendant damages, including but not limited to punitive damages occasioned by the Defendant's intentional conduct.

## JURISDICTION AND VENUE

1. Plaintiffs, Joseph and Catherine Smith, are adult residents citizens of Faulkner County, Arkansas, 50 Highway 107 East, Quitman, Arkansas. The Smith's home and property are located approximately one mile from the *Underwood Injection Well*.

2. Plaintiffs, Robbie and Gwenna Hill, are adult resident citizens of Faulkner County, Arkansas, residing at 11 Buffalo Valley Lane, Quitman, Ar. The Hill's home and property are located approximately 3/4th of a mile from the *Underwood Injection Well*.

3. Defendant Southwestern Energy Company is a Delaware corporation with its principal place of business in Houston, Texas. Southwestern Energy Company is the parent company of its subsidiary SEECO, and at all times

relevant hereto, Southwestern Energy Company, was and continues to be engaged in the operation of Injection Wells including in particular the *Underwood Injection Well* located in Faulkner County, Arkansas.   The Defendant is responsible, either directly or through its agents and/or apparent agents, for the creation and operation of the *Underwood Injection Well* located in the vicinity of Plaintiffs' property.  The Defendant Southwestern Energy Company has done, and continues to do, business in the State of Arkansas, and has committed a tort, in whole or in part, in the State of Arkansas, and likewise has sufficient minimum contacts with Arkansas.  Service may be had upon Defendant Southwestern Energy Company, by serving a copy of the summons and complaint to:

        Southwestern Energy Company
        c/o The Corporation Company
        124 West Capitol Ave., Suite 1900
        Little Rock, AR 72201

4.    Plaintiffs' causes of action arise in the State of Arkansas as a direct result of the tortious conduct of the Defendant.  The tortious conduct of the Defendant is ongoing and constitutes a continuing tort.

5.    The Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the Plaintiffs, and the Defendants, are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

6.  The actions complained of herein occurred in the Eastern District of Arkansas and venue is proper in this Court.

7.  Plaintiffs specifically allege that valid service of process has been issued and properly served upon the Defendant herein.

8.  Plaintiffs specifically allege that the Defendant herein cannot identify any individual or legal entity who is not a party to this action, who caused or contributed to the injuries and damages for which the Plaintiffs seek recovery herein.

9.  The Defendant is being sued individually, and under the Doctrine of Respondeat Superior, for the actions and/or inactions of its agents, apparent agents, servants and/or employees.

## FACTS

10. By way of background, the facts giving rise to this complaint involve the blossoming gas extraction industry which has developed in the State of Arkansas in an extensive rock formation known as the Fayetteville Shale.

Natural gas is extracted from the shale formation through a process known as Hydraulic Fracturing or "fracking," where a horizontal well bore is drilled into the rock formation, and it is then "fractured" by injecting various chemical compounds into the rock formation under extreme pressure.

11. When a gas well is "fracked," as much as 8 million gallons of fracking

fluid is injected into shale rock formation to create fractures in the rock itself. A percentage of that fracking fluid eventually then returns to the surface where it is collected and accumulated for later disposal.

12. Because the fracking fluid contains various toxic and harmful chemicals, it can not be released into the environment. With millions of gallons of fracking fluid being recovered each week from the numerous gas wells in the Fayetteville Shale, disposal of the fracking fluid has become a industry unto itself.

13. In an effort to dispose of the ever accumulating fracking fluid, the Defendant and others decided to inject the used fracking fluid into vertical wells drilled into rock formations both above and below the Fayetteville Shale. Once injected into the disposal wells, the fracking fluid is permanently and forever deposited into the rock formation.

14. For a substantial fee, the Defendant agreed to receive the fracking fluid from various gas wells and to dispose of that fluid by injecting it into *Injection Wells* located across the State of Arkansas.

15. The Defendant is also a Gas well operator itself and charges a fee for the disposal of their own fracking fluid, passing that fee along to land owners, who share in the gas well profits.

16. As the fracking fluid is accumulated at each gas well site, it is pumped into large tank trucks and transported to the Defendants' disposal

facilities located throughout Arkansas.

17. Once at the disposal site, the fracking fluid is pumped from the tanker trucks into huge above ground containers where it is stored until it can be injected under pressure, into porous and absorbent rock formations.

18 The area into which the fracking fluid is injected is known as the disposal reservoir and can encompass several miles of rock formation. Some disposal reservoirs are located *above* the Fayetteville Shale, and others *beneath* it.

19. The disposal reservoir can be thought of as a jar full of marbles, and the fluid is placed in the jar and occupies the spaces between the marbles. The size of the jar or reservoir is determined by the boundaries of the particular formation into which the fracking fluid is injected.

20. According to Larry Bengal, a geologist and the head of the Arkansas Oil and Gas Commission, (AOGC), injected fracking fluid has been known to travel up to two miles away from its injection point. Mr. Bengal testified under oath that once injected into the reservoir formation, the fluid begins to flow into the reservoir, creating a "plume" which then migrates away from the injection point.

21. According to Mr. Bengal, The degree of travel is dependent upon the amounts of fracking fluid that is injected, as well as the size and porosity of the injection reservoir.

22. Prior to drilling an injection well, the Defendant's reservoir engineers make estimations of the size of the injection reservoir based upon the type of rock formations involved, the overlying and underlying formations, and fault systems which would limit the horizontal travel of injected fluid.

23. At the time these reservoir estimates are made, the Defendant is aware that the injected fluid will indeed migrate away from the well bore and into the rock formations underlying property owned by others.

24. Once the injection well is drilled, the amount of fluid which is injected can involve tens of millions of gallons. Indeed, unless the injection process is stopped or terminated it can go on for years, permanently depositing and storing the fracking fluid underneath land owned by others.

25. The Defendants charge a substantial fee to inject and dispose of the fracking fluid beneath land owned by others throughout the State of Arkansas.

26. The Defendant's injection and deposition of fracking fluid on the property of others amounts to a continuing and ongoing trespass and theft of property.

27. As a result of their activities, the Defendant is unjustly enriched by charging a fee to inject fluid into property which is not owned by them, and which is instead owned by your Plaintiffs and others.

28. According to the AOGC's Larry Bengal and James Teff, an reservoir

engineer with Defendant Southwestern Energy, the injected fluid will remain permanently within the rock formations where it is injected. It can never be removed or retrieved, and thus constitutes a permanent trespass upon the lands of the Plaintiffs and others similarly situated.

29. The Defendant was aware prior to injecting the fluid in the *Injection Wells*, that it would travel upon the property of others, and that the migration of that fluid would continue as long as the injection process itself continued.

30. The Defendants never sought to compensate the Plaintiffs and others for their trespass and theft of property. Indeed, the activities of the Defendant were accomplished without any knowledge on the part of the Plaintiffs. The Defendant on the other hand, intentionally engaged in this disposal activity, knowing that it was committing a trespass upon the land of the Plaintiffs and others similarly situated in the State of Arkansas.

## THE UNDERWOOD INJECTION WELL

31. In the fall of 2009, the Defendant sought to develop an injection well to test the possibility of injecting fracking fluid underneath the Fayetteville Shale for permanent disposal.

32. Because it was experiencing high traffic volumes at its other wells, the Defendant secured a lease to drill a fracking fluid injection well in Faulker County, Arkansas. The well is named the *Underwood Injection Well*.

33. The *Underwood Injection Well* is located in Faulker County, Arkansas and is within the immediate vicinity of the Plaintiffs' homes.

34. The *Underwood Injection Well* was drilled vertically through the Fayetteville Shale into a formation known as the Boone formation which lies at a depth of 5,000 feet. Once drilled, the *Underwood Injection Well* began accepting fracking fluid for permanent disposal. At that time, Defendant's reservoir engineer, James Teff, had not fully calculated the potential size of the reservoir in question.

35. During the well's initial operation, over 9,000,000 gallons (Nine Million Gallons) of fracking fluid was injected into the well.

36. Once the injection process was underway, the Defendant was advised that gas wells in the area were being inundated with fracking fluid in amounts which would not have been expected. Eventually, reservoir engineer, James Teff concluded that the fracking fluid injected in the *Underwood Injection Well* was migrating out away from the injection point and then entering the overlying Fayetteville Shale where it was the contaminating the existing gas wells.

37. According to Teff, the fracking fluid from the *Underwood Injection Well* was migrating a lateral distance of at least a mile from the injection.

38. Once the fluid migration was detected, James Teff decided to stop injecting into the lower formations, and instead begin injecting fluid into the Orr

formation which sits on top of the Fayetteville Shale.

39.   Ultimately, in August of 2010 the Defendant decided to stop injecting fluid into the *Underwood Disposal Well.*   By the time the Defendant had stopped the injection process, almost 14 Million Gallons of fracking fluid had been injected into the *Underwood Disposal Well*, all of which migrated away from the injection point, and onto the lands owned by the Plaintiffs and others.

40.   Using the prior analogy, the jar of marbles or reservoir into which the *Underwood Disposal Well* pumped fracking fluid, includes property owned by your Plaintiffs and not owned by the Defendant.  Permanently disposing of fracking fluid on the property of the Plaintiffs is a taking of property, and permanent trespass.

41.   The harmful and/or hazardous and/or caustic and/orcarcinogenic and/or poisonous and/or flammable chemicals and compounds injected by the Defendant into the property of the Plaintiffs are of a toxic and hazardous nature and are therefore ultra hazardous and abnormally dangerous.

42.   The harmful and/or hazardous and/or caustic and/or carcinogenic and/or poisonous and/or flammable chemicals and compounds injected by the Defendant into the property of the Plaintiffs are of a toxic and hazardous nature and are capable of causing severe personal injuries and damages to persons and property, regardless of the degree of caution exercised by the

Defendants.

43. The Defendants activities created an unacceptable risk of harm to the Plaintiffs and their property, along with all other persons and property similarly situated.

44. The Defendants, by engaging in abnormally dangerous and ultra hazardous activities, are strictly liable without regard to fault for all the damages and injuries to the Plaintiffs proximately caused by their injection of fracking fluid into the lands of the Plaintiffs.

45. The Defendant's injection of fracking fluid into Plaintiffs' property constitutes a trespass on the lands of the Plaintiffs, and all others similarly situated.

46. The Defendants trespasses have resulted in physical damage to the property of the Plaintiffs, and all others similarly situated, thereby causing injury to the right of possession of such property.

47. The Defendants, including their agents, apparent agents, servants and/or employees, knew or in the exercise of reasonable care should have known, that the fracking fluid they were injecting in the *Underwood Injection Well* was indeed migrating onto the lands and property of the Plaintiffs.

48. The Defendants were aware and indeed intended for the fracking fluid to migrate and fill the reservoir including those portions of the reservoir which are

on the property of the Plaintiffs.

49. The Defendants, including their agents, apparent agents, servants and/or employees, knew or in the exercise of reasonable care should have known, that the harm caused to the Plaintiffs' property was a foreseeable and inevitable consequence of the migration of the toxic fracking fluid.

50. The Defendants acts and/or omissions mentioned herein were the direct and proximate cause of the damages sustained by the Plaintiffs and their property.

51. Some or all of the acts and/or omissions of the Defendants were grossly, recklessly and wantonly negligent, and were done with utter disregard for the consequences to the Plaintiffs, and therefore the Plaintiffs are entitled to an award of punitive damages.

52. The Plaintiffs in no way caused or contributed or consented to the damages they have sustained.

## CLASS ACTION

53. The Plaintiffs repeat and reallege the allegations of paragraphs "1" through "52" of this Complaint, as if set forth in this paragraph at length.

54. The Plaintiffs bring this action for themselves and on behalf of a class other similarly situated persons consisting of the following:

>   All citizens and/or residents and/or property owners of the

State of Arkansas who live and/or own property within a two mile radius of an Injection Well operated by the Defendant.

55. The Plaintiffs are members of the class that they seek to represent.

56. The class is so numerous that joinder of all members is impracticable.

57. There are questions of law and fact which are common to the class, including but not limited to:

    a. Whether the Defendants activities caused a migration of fracking fluid onto the property of the Plaintiffs and other class members;

    b. Whether the migration of fracking fluids onto the property of the Plaintiffs is a permanent trespass upon Plaintiffs' property and other class members;

    c. How much fluid did the Defendant inject, store and dispose of upon the property of the Plaintiffs and other class members.

    d. What is the per gallon value of the storage space on Plaintiffs' properties which the Defendant has taken without permission or compensation to the Plaintiffs.

    e. How much money has the Defendant generated by this trespass

so that it can be disgorged and distributed to the Plaintiffs and other class members;

    f.    Whether the Defendants are strictly liable for their actions and/or inactions;

    g.    Whether the Defendants activities were intentional;

58. The claims of the representative parties are typical of the class members because the action arises from the same common wrongs against the members of the class.

59. Questions of law and fact common to the members of the class predominate over any questions affecting only individual members because preliminary, overarching issues common to all class members predominate over the individual issues.

60. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because class certification is a more efficient way to handle the case, the class is manageable and class certification will avoid a multiplicity of individual actions.

61. The Plaintiffs will fairly and adequately represent and protect the interests of the class.

## INJURIES AND DAMAGES

62. The Plaintiffs repeat and reallege the allegations of paragraphs

"1" through "61" of this Complaint, as if set forth in this paragraph at length.

63. As a direct and proximate result of the unlawful activities of the Defendants, the Plaintiffs, and all others similarly situated, have suffered the following losses and damages:

    a. Loss of use and enjoyment of their property;

    b. Contamination of their property;

    c. Permanent alteration of Plaintiffs' property by the injection of fracking fluids into that property;

    d. Disturbance and dislocation of the Plaintiffs' property;

    e. Severe diminution in value of their property;

    f. Creation of a toxic waste area upon the Plaintiffs' property

## RELIEF SOUGHT

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs Smith sue the Defendant herein, as follows:

A. Compensatory damages for the injuries enumerated above in the amount of $2,000,000.00 (**Two Million Dollars**).

B. Punitive Damages in the amount of $15,000,000.00 (**Fifteen Million Dollars**).

Plaintiffs further pray for:

    a. Certification of a class as requested;

b.  Judgments for compensatory damages for all class members in an amount commensurate with the damages as set forth above;

c.  Judgments for punitive damages for all class members in an amount commensurate with the damages as set forth above;

f.  An award of the costs of litigating the case;

g.  An award of attorney fees;

h.  An award of pre-judgment interest;

i.  All other relief to which the Plaintiffs may be entitled.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs Hill sue the Defendant herein, as follows:

A. Compensatory damages for the injuries enumerated above in the amount of $2,000,000.00 (**Two Million Dollars**).

B. Punitive Damages in the amount of $15,000,000.00 (**Fifteen Million Dollars**).

Plaintiffs further pray for:

a.  Certification of a class as requested;

b.  Judgments for compensatory damages for all class members in an amount commensurate with the damages as set forth above;

c.  Judgments for punitive damages for all class members in an amount commensurate with the damages as set forth above;

  f.  An award of the costs of litigating the case;

  g.  An award of attorney fees;

  h.  An award of pre-judgment interest;

  i.  All other relief to which the Plaintiffs may be entitled.

PLAINTIFFS RESPECTFULLY REQUEST A TRIAL BY JURY.

       Respectfully Submitted,

       DEAL, COOPER & HOLTON, PLLC.

       _/s/_____
       Timothy R. Holton (2001101)
       John R. Holton (2009056)
       296 Washington Ave.
       Memphis, TN 38103
       (901)523-2222

and

       **MCGARTLAND AND BORCHARDT**

       Michael P. McGartland
       1300 South University Drive
       Fort Worth, Texas
       (817)332-9300