IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBBIE HILL; GWENNA HILL;
JOSEPH SMITH; CATHERINE SMITH;
KATHY L. HAMILTON; JERRY VAN WORMER;
RANDY PALMER; JOYCE PALMER; LARRY KING;
MARGARET KING; ADAM KOFOID;
BRADLEY HOPPER; CRYSTAL HOPPER;
COREY WARDEN; and JULIE WARDEN                      PLAINTIFFS

v.                    No. 4:12-cv-500-DPM

SOUTHWESTERN ENERGY COMPANY;
CHESAPEAKE ENERGY;
and XTO ENERGY                                       DEFENDANTS

ORDER

1. The plaintiffs are Arkansas landowners. All except the Hills leased mineral rights to one of the three defendants (or a predecessor in interest or a subsidiary) — companies that seek and extract natural gas through hydraulic fracturing. Most of the fluid used in fracking stays underground. Some, though, comes back up the well with the gas. The defendants have permits from the State authorizing them to inject this waste fluid in disposal wells. Those wells are on land leased from third parties. The plaintiffs say the waste fluid injected in several disposal wells has exceeded the storage capacity of the subsurface strata beneath the wells and migrated to their property. Each

of the plaintiffs lives a mile or more away from at least one disposal well. The plaintiffs press a host of claims in a lengthy complaint, some with specificity (civil RICO and Arkansas Deceptive Trade Practices Act) and many in passing (fraud, trespass, conversion, unjust enrichment, contract-based). The defendants have responded with comprehensive motions to dismiss. The short story is that a couple of claims survive but most fail as a matter of law.

**2. Preliminary Matters**. First, Southwestern's request to amend its motion papers to clarify that some plaintiffs' leases were with SEECO, a wholly owned subsidiary, is granted. There's no prejudice. And the record needs to be clear. Southwestern's papers are deemed amended; its proposed clarified motion and brief, № 65-1 & 65-2, need not be filed and served. Second, the Court will consider the leases because they're embraced by the complaint and are public records. FED. R. CIV. P. 10(a); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). Though not attached to the complaint, they're attached to Southwestern's brief, and the parties argue from them.

**3. Standing.** The Court rejects defendants' no-standing arguments. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591–92 (8th Cir. 2009). The plaintiffs have sufficiently alleged an injury-in-fact: the presence of unwanted

waste fluid in the ground far below their homes. They say the fracking waste is there, not just that it might be. № 15 at 18-19, 24-25, 32, 35-36, 41, 44. Notwithstanding the blurry post-*Iqbal/Twombly* line, this allegation is more fact than conclusion. Whether the frack waste has, in truth, migrated there is a matter for proof in due course. So, too, is the extent of any injury if migration has occurred. The Court is unwilling to hold, given that defendants have paid other land owners for allowing the waste to be injected into and stored beneath their land, that storage without permission or payment causes no injury. The amended complaint is sufficient and plausible on the injury issue. *Braden*, 588 F.3d at 591-92.

**4. RICO.** The civil RICO claim is dismissed without prejudice as to all defendants. Plaintiffs have not adequately pleaded either an enterprise or racketeering. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 352-58 (8th Cir. 2011). The defendants are competitors in the natural gas business. Each leases mineral rights, drills production wells, and operates them. Each operates disposal wells, too. None of the structural facts needed to show a criminal enterprise are present in the amended complaint. 18 U.S.C. § 1961(4); *Boyle v. United States*, 556 U.S. 938, 946 (2009); *United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004). The alleged mail and wire fraud are also too thin. "RICO does

not cover all instances of wrongdoing . . . it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Const. II, Inc.*, 660 F.3d at 353.

**5. ADTPA.** The defendants' motion is granted on the Arkansas Deceptive Trade Practices Act claim. My Brother Holmes's thoughtful analysis in analogous circumstances applies here. *Williams v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2573196, at *4 (E.D. Ark., 22 June 2010); *RM Dean Farms v. Helena Chemical Co.*, 847 F. Supp. 2d 1125, 1125-27 (E.D. Ark. 15 March 2012). The Oil and Gas Commission and the Arkansas Department of Environmental Quality regulate injection wells. The Commission issued defendants permits to drill and operate these wells. With an immaterial exception, the Deceptive Trade Practices Act "does not apply to[] . . . [a]ctions or transactions permitted under laws administered by . . . [a] regulatory body or officer acting under statutory authority of this [S]tate or the United States." Ark. Code Ann. § 4-88-101(3). XTO is correct: plaintiffs' claim muddles the result (the alleged migration) with the permitted action (drilling and operating the well by injecting the waste). *№ 61 at 9-10.* Whether the Commission should be concerned, in general, with the horizontal migration alleged here is an important policy matter for the State, not for this Court in

this case. If the plaintiffs could proceed on their ADPTA claim based on an alleged regulatory failure, the ADTPA's safe harbor would be closed and § 4-88-101 eliminated from the code.

**6. Fraud.** Plaintiffs' fraud claims fail at the threshold too. Notwithstanding the comprehensiveness of the amended complaint, sufficient particulars that would satisfy Federal Rule of Civil Procedure 9(b) are still missing. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007); *U.S. ex rel Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Some details are alleged, but they don't add up to fraud against these landowners. Using land men from away and securing mineral leases quietly — to minimize cost — is aggressive business, not fraud. It is hard to see how defendants not offering disposal leases, as well as mineral leases, could be fraudulent here. No one has a right to a contract. And the absence of one did not induce plaintiffs to act to their detriment. It is not alleged, for example, that defendants sought mineral leases, all the while intending disposal wells rather than production wells, and then injected waste instead of producing gas. That would be a solid fraud claim. The injection-well notices, which plaintiffs criticize as opaque, were State-approved forms. Plaintiffs have pleaded plausible claims in the circumstances; fraud is not

-5-

among them.

**7. Civil Conspiracy.** This passing claim is dismissed without prejudice. As with the lack of pleaded facts about structure on the RICO claim, the amended complaint offers only conclusions about the alleged combination of defendants to accomplish a common purpose "by unlawful, oppressive, or immoral means...to [plaintiffs'] injury." *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, * 9, 372 S.W.3d 324, 331.

**8. Strict Liability.** Plaintiffs' say the injection wells are an ultrahazardous activity that subjects the gas companies to strict liability for resulting injuries. Maybe so or maybe not. The pleading fails at this point, though, because of the kind of injury alleged—wrongful occupation of the subsurface, not damage to the subsurface, or the surface, or the groundwater. That circumstance makes this case different from the *Tucker/Berry* case, where pollution of groundwater and air was alleged. The injury alleged makes this case primarily, if not exclusively, a matter of trespass. The strict liability claims fail as pleaded.

**9. Contract-Based Claims.** The Court rejects the argument, emphasized by Southwestern, that the plaintiffs' mineral leases (excepting the Hills, who have no lease) allowed migration and storage of frack waste from any other

well. The relevant provision from the Smiths' lease, which is identical to the others, is in the margin.[1] The key words are emphasized. Plaintiffs gave the gas companies the right to inject all manner of fluids, and to leave fluids in the subsurface strata, if that was "necessary, incident to, or convenient for the economical operation of [the Smiths'] land, alone or conjointly with neighboring land...." Plaintiffs did not give, and the defendants did not get, the right to store frack waste fluid from any possible source on plaintiffs'

---

[1] OIL AND GAS LEASE (Paid-up Lease—No Delay Rentals). THIS AGREEMENT, made and entered into this 14th day of February, 2006, by and between Joseph D. Smith, Jr. and Catherine C. Kimble Smith, Husband and Wife of 50 Highway 107, Quitman, AR 72131 hereinafter called Lessor (whether one or more) and SEECO, Inc. 1083 Sain Street, Fayetteville, Arkansas 72702 hereinafter called Lessee. WITNESSETH: Lessor for and in consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration in hand paid, receipt of which is hereby acknowledged, and of the agreements of lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said lessee the lands hereinafter described *for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both*, including but not as a limitation, casinghead gas, casinghead gasoline, gas-condensate (distillate) and any substance, whether similar or dissimilar, produced in a gaseous state, together with the right to construct and maintain pipe lines, telephone and electric lines, tanks, power stations, ponds, roadways, plants, equipment and structures thereon to produce, save and take care of said oil and gas, *and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine, and other fluids into the subsurface strata, said lands being situated in the* County of Faulkner, State of Arkansas, and being described as follows, to wit: SEE "EXHIBIT A" ATTACHED HERETO AND MADE A PART HEREOF FOR COMPLETE LEGAL DESCRIPTION AND ADDITIONAL PROVISIONS of Section 1, Township 8 North, Range 12 West, it being the purpose and intent of lessor to lease, and lessor does hereby lease, all of the lands or interests in lands owned by lessor which adjoin the lands above described or which lie in the section or sections herein specified whether or not herein completely and accurately described, together with and including any accretions thereto which may have formed, may now be forming or may hereafter form. For all purposes of this lease, said land shall be deemed to contain 1.53 acres.

-7-

land. The gas companies' argument from the contract proves too much.

Plaintiffs' claim for violation of the covenant of good faith and fair dealing implicit in their leases, and in all contracts, fails as a matter of law. There is no tort here; and no free-standing claim for breach exists solely on this basis. Allegedly unfair dealing is "nothing more than evidence of a possible breach of a contract between the parties." *Arkansas Research Med. Testing, LLC v. Osborne*, 2011 Ark. 158, *4. Plaintiffs' effort to clarify their breach claim in the briefing falls short. For the same reason Southwestern's attempted defense on the contract fails, Plaintiffs' breach claim fails: the parties' lease simply does not address frack waste fluid from drilling on non-neighboring land. The good faith and fair dealing/breach claim is dismissed.

**10. Conversion.** Plaintiffs' conversion theory fails to state a claim. One converts personal property. *Dent v. Wright*, 322 Ark. 256, 262, 909 S.W.2d 302, 305 (1995); HOWARD W. BRILL, LAW OF DAMAGES § 33:7 (5th ed. 2004). The amended complaint does not plead facts showing that the gas companies exercised dominion over personalty. Plaintiffs do not allege, for example, that the companies extracted gas to which they had no entitlement. Minerals, gas, timber, or anything that can be separated from the land is personal property vulnerable to conversion. *Jones v. Brown*, 211 Ark. 164, 167, 199 S.W.2d 973,

974-75 (1947); *Dillard v. Wade*, 74 Ark. App. 38, 41, 45 S.W.3d 848, 850-51 (2001); RESTATEMENT (SECOND) OF TORTS § 927 (1979) and comment g. A parcel's subsurface storage capacity, however, can't be removed. This part of realty is used or not. The gas companies allegedly used the plaintiffs' subsurface by occupying it without permission. The claim sounds in trespass, not conversion.

**11. Trespass.** Plaintiffs have stated a claim. The essence of real property ownership is the right to use and enjoy it, excluding others if the owner so chooses. RESTATEMENT (FIRST) OF PROPERTY § 7 (1936); *Junction City Lumber Co. v. Sharp*, 92 Ark. 538, 542, 123 S.W. 370, 371 (1909). Unauthorized entry is a trespass; actual injuries or damages are not required. *Pennington v. Woods*, 204 Ark. 26, 31, 161 S.W.2d 16, 18 (1942). Whether *ad coleum* remains the law in Arkansas, as plaintiffs argue, or the governing rule requires actual interference with some reasonable and foreseeable use,[2] as the gas companies contend, the answer is the same at this point in this case. Plaintiffs have

---

[2] The Court notes that the Ohio law argued by the companies, *e.g.*, *Chance v. BP Chemicals, Inc.*, 670 N.E.2d 985, 992 (1996), seems at odds with the Arkansas law that no actual damage need result to create an actionable trespass. *E.g., Pennington, supra*. The Court will continue to study *Young v. Ethyl Corp.*, 521 F.2d 771 (8th Cir. 1975), but is not yet persuaded that the decision goes as far as XTO argues on this point. № 61 at 3-4.

pleaded a plausible trespass claim: they allege that the gas companies' fracking waste fluid has migrated from nearby injection wells into the subsurface strata of plaintiffs' real property. Use of this part of plaintiffs' land for storing fracking waste is both reasonable and foreseeable given the gas companies' undisputed use of strata beneath nearby land in this very way. If the waste fluid has migrated, interesting and difficult damage issues may well arise, not least because, given how fracking is done and what the parties' leases authorize, there was liquid waste beneath plaintiffs' property before any migration. We'll take these issues if and when they come. The motions to dismiss are denied on the trespass claim.

**12. Unjust Enrichment.** Plaintiffs have pleaded a plausible restitution claim too. The parties' leases do not cover this issue. So the law may imply a contract, if justice in the circumstances requires one, to prevent unjustified enrichment. *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606–09 (8th Cir. 1999). "A person who obtains a benefit by an act of trespass or conversion, by comparable interference with other protected interest in tangible property, or in consequence of such an act by another, is liable in restitution to the victim of wrong." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 40 (2011) and comment c.

\* \* \*

Motion to amend, № 65, granted as modified. № 23 & № 24 deemed amended. Motions to dismiss, № 23 (as amended), № 33, & № 41 granted except on the trespass and unjust-enrichment claims and the class-certification issue, which isn't ripe yet. All the dismissals are without prejudice. An Initial Scheduling Order will issue.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

26 September 2013